[S. F. No. 1311.   Department One.—July 19, 1900.]

## D. C. SAMPLE, Respondent, v. FRESNO FLUME AND IRRIGATION COMPANY, Appellant.

Contract with Water Company—Blank Exhibit to be Executed—Certainty.—A contract with a water company, in which it agreed, in consideration of the transfer to it of certain stock and other privileges, to furnish a specified quantity of water, and a transfer of said water rights to be drawn upon the form adopted by the corporation annexed as a blank exhibit, and subject to its terms and conditions, to be executed between the parties and subject to the reasonable rules and regulations of the company not conflicting with the contract or the agreement to be executed, is not rendered void for uncertainty by the absence from the blank exhibit of the price of the water right and the annual rent to be paid.   The price was fixed by the consideration received, and the annual rent or rate was a mere incident to the agreement, subject to reasonable change as circumstances may require.

Id.—Reasonable Interpretation—Validity of Contract.—The contract should receive a reasonable interpretation, and such that would give it effect, instead of that which would make it void; and where, taking the two papers together, and having in view the circumstances under which the contract was entered into, the meaning and intention of the parties can be understood with sufficient clearness, the validity of the contract must be sustained.

Id.—Breach of Contract—Action for Damages—Pending Injunction not a Defense.—The water company is liable in an action for damages for breach of its contract to furnish the water as agreed, where the findings establish that it completed its flumes and ditches to and beyond the point at which it agreed to deliver it, and that in the exercise of reasonable diligence it could have delivered the water, and failed to do so.   It is no defense to such action that, at suit of another corporation, the defendant has been enjoined from diverting sufficient water to comply with the contract, and that such injunction is still pending.

Id.—Excuse for Nonperformance—Prevention — Inability—Impossibility.—An injunction at suit of a private litigant is not a prevention by operation of law, nor by an irresistible superhuman cause, and is not a legal excuse for nonperformance of the contract.   If what is agreed to be done is possible under any circumstances, notwithstanding any difficulty or inability of the party, under unforeseen circumstances, to comply with the contract, he must make compensation in damages for nonperformance.   The impossibility which will excuse nonperformance

must consist in the nature of the thing to be done, and not in the inability of the party to do it, unless such inability is provided against in the terms of the contract.

ID.—DELAY IN DETERMINING INJUNCTION SUIT—MODIFICATION.—Where great delay is apparent in determining the injunction suit and no steps had been taken ·after the lapse of several years to have the injunction dissolved, but it appears that it was modified to permit the defendant to divert some water, it cannot be left optional with the defendant to comply with its contract or not as its convenience may dictate.

ID.—RETENTION OF CONSIDERATION.—The defendant cannot retain the consideration paid for carrying out the contract, and refuse or neglect to carry out its part thereof.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. E. W. Risley, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, for Appellant.

The agreement is void for uncertainty, and cannot be enforced. (*Easton v. Millington,* 105 Cal. 49; *Rauer v. Fay,* 110 Cal. 361; *Van Slyke v. Broadway Ins. Co.,* 115 Cal. 644; *Talmadge v. Arrowhead Reservoir Co.,* 101 Cal. 367; *Lyman v. Robinson,* 14 Allen, 242; *Pepper v. Harris,* 73 N. C. 365; *Atkins v. Van Buren School Tp.,* 77 Ind. 447; *Leslie v. Smith,* 32 Mich. 64; *Brown v. New York Cent. R. R. Co.,* 44 N. Y. 79, 83; *Mayer v. McCreery,* 119 N. Y. 434.) The promise was conditional, and the conditions of liability have not been fulfilled, and the defendant is not in default. (Bishop on Contracts, sec. 580; *Bachman v. Meyers,* 49 Cal. 220; *Cox v. McLaughlin,* 63 Cal. 196; *Hanson v. Slaven,* 98 Cal. 377; *Stockton v. Weber,* 98 Cal. 433; *Henry v. Sacramento,* 116 Cal. 628; *Tebo v. Robinson,* 100 N. Y. 27.) The defendant was excused from performance by a supervening impossibility. (Hollingsworth on Contracts, 559; 1 Beach on Contracts, sec. 773; *Lorillard v. Clyde,* 142 N. Y. 456; *Heine v. Meyer,* 61 N. Y. 171.) Legal process or obedience to an order of court is a sufficient prevention of performance. (*Melville v. De Wolf,* 4 El. & B. 844; *Lehigh Zinc etc. Co. v. Trotter,* 42 N. J. Eq. 678; *People v. Globe Mut. etc. Co.,* 91 N. Y. 174; *Burkhardt v. Georgia School Tp.,* 9 S. Dak. 315.)

M. K. Harris, for Respondent.

The contract is not void for uncertainty. It must be construed according to the intention of the parties. (*Saunders v. Clark*, 29 Cal. 300.) He who agrees to do an act must do it unless it is absolutely impossible. He should provide against contingencies in the contract. (*Dermott v. Jones*, 2 Wall. 6; *McGehee v. Hill*, 4 Port. 170[1]; *Adams v. Nichols*, 19 Pick. 275[2]; *Reid v. Edwards*, 7 Port. 508[3]; *Booth v. Spuyten Duyvil etc. Co.*, 60 N. Y. 487; *Tompkins v. Dudley*, 25 N. Y. 272[4]; *School Dist. No. 1 v. Dauchy*, 25 Conn. 530[5]; *Superintendent of Schools v. Bennett*, 27 N. J. L. 373.[6]) The injunction was no excuse for nonperformance. (*Klauber v. San Diego Street-Car Co.*, 95 Cal. 357, 358.) The obligor contracts that he can and will control the acts of third parties, so far as necessary to enable him to perform his contract. (*People v. Bartlett*, 3 Hill, 570.) Under section 527 of the Code of Civil Procedure, amendment 1895, this injunction does not continue in force for a longer period than one year from the time it was granted, except by defendant's consent. This law is applicable to said injunction, although enacted after the injunction was issued. (*Moore v. Martin*, 38 Cal. 428; *Oullahan v. Sweeney*, 79 Cal. 537[7]; *Mill etc. Co. v. Olmstead*, 85 Cal. 81.)

VAN DYKE, J.—This is an action for damages arising from an alleged breach of a contract concerning water rates. The plaintiff had judgment in the court below for the sum of seven thousand two hundred dollars and costs of suit. The appeal is taken from said judgment and from the order denying defendant's motion for a new trial.

The first point made by the appellant is that the contract in question is void for uncertainty. The defendant corporation, it seems, was formed for the purpose of acquiring water and water rights, and to divert and use the same by means of flumes, ditches, reservoirs, and other conduits for irrigation, milling, fluming, and other purposes, and the sale, lease, and rent of

[1] 29 Am. Dec. 277.
[2] 31 Am. Dec. 137.
[3] 31 Am. Dec. 720.
[4] 82 Am. Dec. 349.
[5] 68 Am. Dec. 371.
[6] 72 Am. Dec. 373.
[7] 12 Am. St. Rep. 172.

water and water rights and waterworks, and in pursuance of these objects and purposes on its part the defendant had to secure means to carry the same into execution. On the 10th of June, 1892, it entered into the contract in question with one Benjamin Kendricks, assignor of the plaintiff, a copy of which is as follows:

"Know all men by these presents, that the Fresno Flume and Irrigation Company, a corporation duly organized and existing under and by virtue of the laws of the state of California, for and in consideration of the transfer to it of certain stock and other privileges by Benjamin Kendricks, and other valuable consideration to it in hand paid, the receipt whereof is hereby acknowledged, does hereby promise and agree to and with the said Benjamin Kendricks to make, execute, and deliver to said Benjamin Kendricks whenever its ditches, flumes, and works are completed to Big Dry creek, at or near section 21, in township 12 south, of range 22 east, Mount Diablo base and meridian, and whenever it is ready to furnish and deliver water therein, and at said place, agreements and water rights, deed or deeds sufficient in form and effect to entitle the said Benjamin Kendricks to the use of six (6) cubic feet of water per second, said water rights to be drawn upon the form adopted by said corporation hereto annexed, exhibit 'B,' and subject to each and all of the conditions and agreements thereof, to be signed and executed by each of said parties, or to whichever party the said Benjamin Kendricks may assign his interest in and to any portion of said water. Said water to be furnished in pursuance of said agreement so to be executed, subject to each and all of the reasonable rules and regulations of said corporation which it has adopted or may adopt; said rules and regulations not to conflict with the provisions of this agreement, and said agreement so to be executed."

The objection seems to go to the form of water rights annexed to the contract, and the particular in which the form seems to be incomplete is that there is a blank left for the price to be paid for the water rights and the amount of the annual rents. In this case, however, the blank in the form in reference to the price to be paid cuts no figure, inasmuch as

the full value of the water rights was paid by Kendricks at the time of entering into the contract, by the transfer of certain stocks and other privileges, held by him, to the defendant corporation. It was altogether unnecessary to repeat this in the form attached to the contract when it had already been specified in the contract itself, and the two papers have to be read together. The form was evidently prepared by the company to be used in reference to water rights, when they were to be sold upon a credit. As to the sum to be charged as annual rent, that is a mere incident to the agreement, and subject to changes as circumstances may require. The only limitation upon the right of the defendant to make changes or fix this annual rent or rate is that it must be reasonable.

Taking the two papers together, and having in view the circumstances under which the contract was entered into, the meaning and intention of the parties can be understood with sufficient clearness. The contract should receive a reasonable interpretation, and such that would give it effect, instead of that which would make it void. (Civ. Code, secs. 3541, 3542.)

It is further contended on the part of the appellant that the company is only required to execute and deliver agreements, water rights, and deeds to entitle the plaintiff, as assignor of Kendricks, to the water mentioned in the contract, whenever it is ready to furnish and deliver the water therein at the place mentioned, and that it is not yet ready to furnish said water. The court finds, however, "that on or about the first day of July, 1894, the defendant had completed its flumes and ditches to and beyond said Big Dry creek, at or near said section 21, township 12 south, of range 22 east, Mount Diablo base and meridian, and said flumes and ditches ever since have been and now are, in a condition to receive and deliver said water to this plaintiff, and ever since the said first day of July, 1894, by the exercise of reasonable and proper efforts and diligence on its part, it has been possible for said defendant to and it could have delivered to plaintiff said six cubic feet of water so agreed to be delivered."

It is contended, however, as another reason why the defendant is not ready to furnish and deliver water according to said

agreement, that it has been enjoined from diverting water, and the injunction still remains in force. It appears that on the twenty-fifth day of September, 1894, an action was commenced in the superior court of the city and county of San Francisco by the San Joaquin and Kings River Canal and Irrigation Company as plaintiff against said defendant; that an injunction was issued and granted by said court upon the application of said plaintiff in said action, and served upon said defendant, commanding the defendant to desist from diverting or from doing any act to divert the waters from Stevenson creek, or of the San Joaquin river, and from obstructing by means of dams or other obstructions the flow of water from Stevenson creek and the San Joaquin river down to the canal and riparian lands of the plaintiff in said action, which canal and lands were situated below the point specified in the memorandum of agreement as the point where the defendant was to deliver water. That said injunction has since remained in full force and effect, except that the same was modified to permit the defendant to divert sufficient water to conduct fluming operations in the county of Fresno.

This is not a legal reason or excuse for nonperformance of the contract on the part of the defendant. It is not a prevention by operation of law, or by an irresistible, superhuman cause. (Civ. Code, sec. 1511.) This question was considered in *Klauber v. San Diego Street-Car Co.*, 95 Cal. 353. The court there say: "No case has been cited in which it has been held that interference by a writ sued out by a private litigant will excuse performance of a contract, although it may deprive the contractor of the means of performance. It is not prevention by operation of law. It is the act of an individual, and not of the government. In a certain sense, the property so taken may be in the custody of the law, and yet the seizure may be wrongful and the suitor held responsible as for a trespass and damages. The law recognizes the fact that these private remedies may be wrongfully—that is, illegally—used, and the litigant is required to give security for any damage that may be caused if it should be finally decided that the writ was improperly issued. This cannot be called the operation of law within the meaning of the Civil Code. . . . . Nor would it be a defense that the

law has rendered it difficult or very expensive to perform. The rule is, if performance is in itself possible, there is a breach, although the obligor himself may have become wholly unable to perform. . . . . To warrant the application of the principle, the impossibility must consist in the nature of the thing to be done, and not in the inability of the party to do it; or, as it is sometimes termed, be an *impossibilitas rei* as distinguished from an *impossibilitas facti*. If the thing could be accomplished by anyone with proper means and the requisite skill and knowledge, the promisor was not less answerable because it was impossible to him. (Hare on Contracts, 639.) The principle deducible from the authorities is that, if what is agreed to be done is possible or lawful, it must be done. Difficulty or improbability of accomplishing the undertaking will not avail a defendant. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse nonperformance." (*The Harriman*, 9 Wall. 172.) As was said in *Wilmington Transp. Co. v. O'Neil*, 98 Cal. 5: "Where a party has expressly undertaken without qualification to do anything not naturally or necessarily impossible under all circumstances, and he does not do it, he must make compensation in damages, though the performance was rendered impracticable or even impossible by some unforeseen cause over which he had no control; but against which he might have provided in his contract."

The injunction suit referred to, it seems, was commenced September 25, 1894, and yet at the time of the commencement of this action, and also at the trial thereof on the 30th of April, 1897, no steps were shown to have been taken to have said injunction dissolved, nor does it appear that any especial efforts have been made upon the part of the defendant to have the case determined. It does appear, however, that the injunction was modified to permit the defendant to divert sufficient water to conduct the fluming operations in the county of Fresno. Plaintiff, the assignee of the original party to the contract, and for whose benefit it seems the contract was made, is shown to own a large body of land necessary to be irrigated, and it is fair to presume that the parties understood at the time of entering into the agreement that the system of irrigation works should be constructed and completed at least within a reason-

able period of time, and the fact that the water rights were paid for at the time of entering into the contract furnishes further evidence that such was the understanding. It is not reasonable to suppose that one of the parties to this contract paid a consideration for the water rights and water to be supplied, leaving the question entirely optional with the defendant to comply with the contract or not, as convenience might dictate. The defendant cannot refuse or neglect to carry out its part of the contract, and still retain the consideration paid for carrying it out.

The evidence supports the findings. Appellant's objections to certain rulings of the court made during the progress of the trial in reference to the introduction of testimony are not well taken.

Judgment and order affirmed.

Harrison, J., and Garoutte, J., concurred.

Hearing in Bank denied.